## UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

_____

No. 94-11136
Summary Calendar
_____


MIA FITE,

Plaintiff-Appellant,

versus

AER MFG.,

Defendant-Appellee.

_____

### Appeal from the United States District Court
### for the Northern District of Texas
### (3:92 CV 2486 P)
_____

August 17, 1995

Before JONES, BARKSDALE and BENAVIDES, Circuit Judges.

PER CURIAM:[*]

Mia Fite appeals the grant of summary judgment in favor of AER Mfg. in this case alleging sexual and racial harassment and discrimination, and retaliation for filing an EEOC complaint and/or workers compensation claims. Finding no error in the district court's judgment, we affirm.

---

[*] Local Rule 47.5 provides: "The publication of opinions that have no precedential value and merely decide particular cases on the basis of well-settled principles of law imposes needless expense on the public and burdens on the legal profession." Pursuant to that Rule, the Court has determined that this opinion should not be published.

## BACKGROUND

Fite was hired by AER, a Texas corporation engaged in the remanufacturing of automobile engines and parts, as an hourly employee on or about April 30, 1990. On September 10, 1991, she received her first written notice of violation from her supervisor, Richard Gentry, for failing to apply herself to her work, failing to arrive at work on time, and failing to begin work immediately upon arrival. The notice warned that if the lack of effort continued, Fite's employment would be terminated. On November 18, 1991, Gentry issued a second written notice complaining of inattentiveness and failure to follow instruction after the lead-man in Fite's department reported that she was ineffective and requested her transfer. On November 23, 1991, Fite was fired when she arrived more than two hours late for work without having properly reported in.

Appellant filed a charge of racial discrimination with the Equal Employment Opportunity Commission ("EEOC") on November 18, 1991, during time off she was granted to see a company doctor. After the EEOC found inter alia ". . . that White and non-White employees participated in exchanging racial/ethnic bantering all in a friendly manner . . . not tolerated by company management," Fite filed a pro se lawsuit on November 30, 1992 setting forth three distinct charges of racial discrimination. Appellant first contended that her September 10 "write-up" was racially motivated, as a white co-worker was not written up for also arriving late. Next, Fite asserted, that despite having granted her earlier

2

requests for transfer, AER discriminated against her on the basis of race on or about October 13, 1991 when it failed to consider her for a part puller position in the Sales Department but instead gave the job to a white female co-worker. Finally, appellant's original petition and EEOC charge also alleged that she was subjected to a racially hostile work environment.

With respect to Fite's hostile environment claim, she alleged, and the summary judgment evidence confirms, that her immediate supervisor, Johnnie Williams, as well as AER employees Clarence Geary, Eddie Hardy, and James Foster, two of whom are black, commonly made use of racial slurs. Fite admits that no one used such derogatory language with respect to her, but it was used in her presence, and the EEOC found that appellant herself engaged in the "bantering." Fite never reported the use of the racial language to her manager, Richard Gentry, but she did ask Geary to stop using such language in her presence. Geary complied, but appellant now complains that she continued to overhear him through the bathroom walls.

On October 22, 1993, Fite filed an amended petition with the assistance of counsel and for the first time raised in court claims of sexual harassment, Title VII discharge violations, as well as six new state law claims.[1] Specifically, Fite alleged that co-workers J.T. Neal and Clarence Geary touched her in very

---

[1] Appellant's state law causes of action consisted of claims of negligent supervision, assault, invasion of privacy, intentional infliction of emotional distress, wrongful termination under Article 8307c of the Texas Labor Code, and vicarious liability. Vicarious liability was rejected by the district court and, since Fite did not raise the issue on appeal, it has been waived.

sexually offensive ways, and Geary and Johnnie Williams told her unwelcome stories of their sexual exploits. Fite reported Neal's conduct to AER, which investigated the allegation and issued him a notice of violation. Neal did not repeat his behavior after the warning. Likewise, Geary stopped harassing appellant after she asked him to stop his lewd behavior. Fite states that she did not report the Geary or Williams incidents because she considered Gentry to be hostile toward her and she believed that she could handle the situation herself.

The district court granted summary judgment on all of Fite's claims, both state and federal, and appellant has chosen to appeal only her Title VII racial and sexual harassment and discrimination claims and the Title VII and 8307c retaliation claims. On appeal, Fite charges that the district court erred in granting summary judgment in favor of AER and in thus finding neither procedural errors or no genuine issues of material fact with respect to these claims.

## DISCUSSION

Fite contends that the district court's conclusion that her sexual harassment claim was untimely filed in federal court and does not "relate back" to her original employment discrimination claim was in error. We disagree. Appellant was issued a Notice of Right to Sue by the EEOC on August 28, 1992, which expressly informed her that she had ninety days in which to file suit in

4

federal court.[2]  On November 30, 1992, Fite filed her original petition with no references to or allegations of any facts which could give rise to a sexual harassment claim.  It was not until almost a year later on October 22, 1993, with the filing of the amended petition, that Fite first made AER aware of her sexual harassment complaint.[3]  She argues, however, that under Federal Rule of Civil Procedure 15(c), appellee should have adequately been put on notice of sexual harassment claims as they "arose out of the conduct, transaction, or occurrence set forth in the original pleading."  In support of this position, Fite cites this court's decision in FDIC v. Conner, 20 F.3d 1376, 1385 (5th Cir. 1994).  We note, however, language from the same opinion which states, "an amended pleading will not relate back if it asserts new or distinct conduct, transactions, or occurrences as the basis for relief." Id. at 1386.  Sexual misconduct is not the same as racial misconduct.  They are two distinct behaviors which cannot be equated in the manner Fite contends.  Nor are Fite's other citations, which hold that Title VII claims can relate back to § 1981 claims (and vice-versa), persuasive; Title VII and § 1981 are not distinct occurrences or activities, as is the case here, but distinct methods of making oftentimes the same claim.  See Watkins v. Lujan, 922 F.2d 261 (5th cir. 1991); Caldwell v. Martin Marietta

---

[2]    We note that appellant, even allowing the three-days mailing period prescribed by Federal Rule of Civil Procedure 6(e), waited to file her complaint on the ninety-first day presumably because the ninetieth day fell on a Sunday.  Such delay is not encouraged.

[3]    The district court's determination that Fite adequately exhausted her administrative remedies with respect to her sexual harassment and discrimination claims is also correct.

<u>Corp.</u>, 632 F.2d 1184 (5th Cir. 1980). Accordingly, the relevant test for relation-back in this situation is whether the original complaint apprised AER of the sexual harassment and discrimination claims. <u>McGregor v. Louisiana State Univ. Bd. of Sup'rs.</u>, 3 F.3d 850, 864 (5th Cir. 1993). Here, nothing in Fite's original filing could conceivably have put AER on notice of such allegations, and, therefore, dismissal of Fite's untimely sexual harassment claim was proper.

Fite next contends that the grant of summary judgment on her claim of racial harassment was improper because AER was either actually or constructively aware of such conduct, and the harassment was sufficiently pervasive to be actionable under Title VII.[4] There are two theories under which a corporate employer can be held liable for hostile work environment harassment. First, where the harasser is the plaintiff's employer, or an agent of the employer who controls the terms and conditions of employment, the employer is directly liable for the harassment. <u>Nash v. Electrospace System, Inc.</u>, 9 F.3d 401, 404 (5th Cir. 1993). Second, where the hostile work environment is created by a person such as a co-worker, the employer may be held liable if it can be established that the employer knew or should have known of the harassment and failed to take prompt remedial action. <u>Id</u>. Fite hints at both theories of liability.

---

[4] Fite additionally contends that AER should be held liable as a result of the company's inadequate sexual and racial harassment and discrimination policy. This court, however, will not hear arguments presented for the first time at the appellate level. <u>Stanley Educ. Methods v. Becker C.P.A. Review</u>, 539 F.2d 393, 394 (5th Cir. 1976).

While Fite readily admits that she never informed management of her harassment complaints, she argues that AER is liable as Johnnie Williams, her immediate supervisor (now dead), participated in the use of racial and derogatory language. This attempt at imputing liability upon AER fails, however, as no evidence is proffered or exists which would show Williams was in a position to control the terms and condition of Fite's employment. To the contrary, the record indicates that Williams did not set company policy, did not hire, fire or promote employees, and did not have the authority to issue a written notice of violation to Fite. Nash, 9 F.3d at 403(first-line supervis[or] did not control the terms and conditions of employment).

Nor does appellant succeed in her attempt to show that the harassment was so pervasive that the employer must have been aware of it. Dornhecker v. Malibu Grand Prix Corp., 828 F.2d 307 (5th Cir. 1987). There is no doubt that unfortunate use of racial slurs occurred in Fite's vicinity at AER, but her claim that the district court ignored important evidence that created an issue of material fact is overstated. In fact, the record indicates that Fite was aware of AER's policy against the use of racially offensive language, but she never complained of such behavior to management. Appellant also admits that all of the slurs were exchanged outside the earshot of any management employees, and some incidents even occurred away from the workplace. Further, the record indicates the alleged offenders cleaned up their language around Fite at her request. While absolutely none of this alleged

7

behavior can be condoned, Fite has made no showing of the "pervasiveness of the harassment which [would] give[] rise to the inference of knowledge or constructive knowledge" by the employer. Waltman v. Int'l. Paper Co., 875 F.2d 468 (5th Cir. 1989).[5]

Fite also claims that racial discrimination was the motivating factor in AER's issuance of a written reprimand, the alleged denial of "promotional" opportunities, and Fite's eventual dismissal. None of these claims is substantiated by the evidence, however. In fact, with respect to the September 10, 1991 write-up, appellant readily admits she was late to work and that she did not begin work upon arrival. Fite's personnel file also indicates that her superiors had noted that she did not apply herself to her job. To combat these facts, appellant has not refuted the evidence nor has she offered any evidence or hypotheses of her own to support her theory of discrimination. Fite's suspicion that Gentry fired her for race-related reasons simply does not warrant reversal of the grant of summary judgment upon this or any other issue in this appeal.

Fite's claim of discriminatory denial of promotional opportunities also fails. Fite bases her claim solely on the fact that a white co-worker, Elizabeth Schultz, was transferred to a position that she (Fite) admittedly never inquired about. Not only did appellant receive the only transfers she ever requested, she

---

[5] As AER had no knowledge of Fite's allegations of racial harassment, we need not discuss the remedial actions taken "reasonably calculated to end the harassment." Jones v. Flagship Int'l., 793 F.2d 714, 719-20 (5th Cir. 1986), cert. denied, 479 U.S. 1065, 107 S.Ct. 952 (1987).

has also acknowledged that Schultz's new job entailed a lateral transfer rather than a promotion. Furthermore, Fite has offered no evidence to refute AER's proffered explanation for choosing Schultz rather than appellant for the "puller" position, namely, that Schultz was already familiar with the part location and numbering system.

Fite also alleges that she was discharged for racially discriminatory reasons. This wanton claim is completely contradicted by the record, however, which indicates that AER acted responsibly in its handling of Fite's termination. Not only did AER make exceptions for Fite's study and medical needs, it also went to pains to put her on notice of her unsatisfactory performance. Additionally, in light of the fact that Gentry denies any racial animus in his dismissal decision, the fact that approximately 85% of Fite's co-workers were also minorities, and the absence of any evidence whatsoever offered by appellant to support her charge, the grant of summary judgment upon this claim of racial discrimination was correct.

An employee must show three things to establish a prima facie case of retaliation -- that she engaged in an activity protected by Title VII, that an adverse employment action followed, and that there was some causal connection between the activity and the adverse action. Collins v. Baptist Memorial Geriatric Center, 937 F.2d 190, 193 (5th Cir. 1991), cert. denied, ____ U.S. ___ (1992). Fite supports her claim by noting the close temporal proximity between the filing of the EEOC charge and her discharge.

9

While this may raise an inference of a Title VII retaliation, AER has fully met its burden of presenting a legitimate, non-retaliatory explanation for its decision to dismiss Fite. The record indicates that Fite was terminated because she was late and did not call her supervisor within thirty (30) minutes of her start time. It has also been shown that appellant had been issued two warnings prior to her termination, and Gentry, who made the ultimate decision to fire Fite, did not find out about her EEOC claim until two (2) days after her dismissal on November 23, 1991. The only evidence offered by appellant that AER's legitimate, nondiscriminatory reason was pretextual is deposition testimony that other co-workers had equally poor absenteeism records but were treated differently. Even if those employees were white, Fite failed to generate a material issue of fact that they were similarly situated and received preferential treatment. Summary judgment was proper for her EEOC retaliation claim.

Fite finally claims that she was terminated in violation of article 8307(c) of the Texas labor laws in retaliation for having filed three separate claims for workers' compensation during the final two months of her employment.[6] In order to prevail on this claim, Fite must offer some evidence of a causal connection beyond her own subjective belief of retaliation. Hope v. MCI Telecommunications Corp., 937 F.2d 258, 265 (5th Cir. 1991), cert. denied, 504 U.S. 916 (1992). Fite must show that the filing of the

---

[6]     The former Rev. Civ. Stat. Ann. art. 8307(c) has been repealed and replaced with Texas Labor Code § 451.001.

claim(s) was a determining factor in her discharge. Id. Fite has not and cannot make this showing. Instead, she continues to assert that the proximity in time between her filing for workers' compensation and her dismissal is direct evidence of retaliation. Additionally, Fite expressly rejects as controlling the test for causal connection used by the district court as first explained in Palmer v. Miller Brewing Co., 852 S.W.2d 57, 61 (Tex. App.--Fort Worth 1993, writ denied).[7] Palmer indicates that to demonstrate existence of a causal link one must show: (1) knowledge of the claim by those making the decision to terminate; (2) a negative attitude toward the employee's injured condition; (3) failure to follow company policy when disciplining an employee who made a claim; and (4) discriminatory treatment when compared to other employees with the same disciplinary problems. Recognizing that this standard is controlling, and assuming that AER knew of Fite's five total compensation claims and in all likelihood possessed a negative attitude toward them, we find that appellant still has not offered any evidence that AER failed to follow its own company policy or that other employees with the same poor record she had were treated any differently. Accordingly, this claim also fails.

For all the foregoing reasons, the judgment of the district court is **AFFIRMED.**

---

[7] As Fite filed her lawsuit in Dallas, she claims the test adopted by the Fort Worth court is not binding precedent upon her claim. We bring her attention to Williams v. GNB Batteries Technologies, 1995 WL (March 30, 1995), where the Dallas Division of the Texas courts of appeals expressly applies the elements to a similar claim.